The Bank of the State of Alabama v. Martin & Huntington.

---

## THE BANK OF THE STATE OF ALABAMA v. MARTIN AND HUNTINGTON.

1. Where a contract was entered into for the performance of professional services, the value of which was to be ascertained by arbitration, if the parties could not agree; if the party for whom they are rendered refuses to have them arbitrated, *assumpsit* will lie for a *quantum meruit*.
2. Where professional gentlemen agree with their client, that as it could not be known what business they would be required to perform, they would receive for their services what any gentleman of the bar would consider reasonable, this is an agreement to arbitrate, and will not bar an action.
3. An agreement by counsel to attend to the litigated business of a Bank, pending and to be brought before the Courts, to the end of the then current year, does not oblige the counsel to attend to such as are undetermined at the end of the year.
4. The act of 1839, in prescribing the salary of the Attorneys of the State Bank and its branches, applies alone to the regular Attorney in the different Banks, who is elected by the Directors, and does not inhibit the Banks from the employment of such other professional assistance as their interest may require.

Writ of Error to the Circuit Court of Tuscaloosa.

This was an action of assumpsit by the defendants in error against the plaintiff, to recover damages, for services rendered

by them as attorneys and counsellors at law, in the prosecution of suits, and in giving professional advice. The cause was tried on the plea of non assumpsit, and a verdict and judgment rendered in favor of the plaintiffs below, for twenty-five hundred dollars and eleven cents. On the trial the defendant excepted to the ruling of the presiding Judge, from which it appears that the plaintiffs adduced evidence tending to show the performance of professional services by them as alledged, at the defendant's request. The defendant then offered a letter, addressed by the plaintiffs to the defendant, of which the following is a copy:

_Tuscaloosa, July_ 15, 1841.

Gentlemen—In reply to your proposition to engage our services in the litigated business of the Bank, pending and to be brought before the Courts during the remainder of the year, stipulating also, as a part of our duty in the engagement, that we shall take such steps in procuring the testimony in those cases as we may be able to do, we have to say we are willing to enter into the engagement; and as to the compensation, we are willing to take such as any gentleman of our profession would consider reasonable, or would engage to do it for; we add this, because it is not known, nor can it be ascertained, what amount of business will be required to be done by us. As you mentioned the limited authority of the board to make expenditures for this kind of service, and the pressing demand for aid to your attorney, from an increased amount of business, we are willing, should the business of the Bank in which our services are required, demand a charge by us, larger than the Board may feel authorized, without further authority from the Legislature to pay, to rely for any excess on that body.

Very respectfully,

MARTIN & HUNTINGTON.

Messrs. _John Marrast_ and _Joel White,_ Committee, &c.

It was also proved by the defendant, that the letter of the plaintiffs contained the contract between the parties, under which the plaintiffs performed the services in question. The evidence further showed that the plaintiffs had attended from the date of the letter, until the end of the year 1841, to the liti-

gated cases of the defendant in Court; and that some of these cases were yet undisposed of—that after the expiration of that year, the plaintiffs rendered to the defendant an account for their services, upon the reception of which, the defendant, without notice to the plaintiffs, took the opinion of third persons as to the value of their services, and voted as an equivalent therefor the sum of five hundred and sixty dollars; but the plaintiffs refused to accept the same. That plaintiffs had offered to submit the matter in controversy to some member of the Tuscaloosa bar, which defendant declined; that they had asked permission to have attorneys examined before the committee of the Bank Directors having the matter in charge, which was denied.

The defendant's counsel moved the Court to charge the jury that the evidence in the cause had shown a special contract between the parties, and that the plaintiffs could not recover in the form of action adopted. This charge was refused, and the Court instructed the jury, that if they found that the defendant had, without notice to the plaintiffs, or asking or obtaining their participation in the matter, undertaken to fix the value of their services, after receiving their account, the plaintiffs were not bound by the acts of the directors, but were authorized to sue in the form in which they had declared, and recover so much as their services were worth.

To the refusal to charge, and to the charge given, the defendant excepted.

The defendant's counsel also prayed the following charge, that the plaintiffs' undertaking by their letter was entire, and if any of the litigated cases of the defendant which were in Court when the plaintiffs were employed, were yet undisposed of, they could not recover; which was refused. But the Court charged the jury, the plaintiffs had performed their contract, if they had attended to those cases during the year 1841.

To the refusal to charge, and the charge given, the defendant excepts.

The defendant's counsel further prayed the Court to charge the jury, that the act of February, 1839, restrained the defendant to the appropriation of one thousand dollars for legal services for one year, and that the Directors had no authority to

contract for or employ services which required the payment of
a greater sum; which was refused.   But the Court charged the
jury, that under the act of February, 1839, the defendant had
no power to employ a general attorney for one year at a great-
er salary than one thousand dollars; and for that sum they had
a right to his services during that period, in all legal matters,
but if it became obvious, that from pressing exigencies the gen-
eral attorney was inadequate to the successful management of
the defendant's business, and the interest of the Bank was like-
ly to suffer, then the Directors had a right to contract for, and
compensate such additional legal services as the exigency of
the case required.

To the charge given, as well as the refusal to charge, the de-
fendant excepted.

B. F. PORTER, for the plaintiffs in error, insisted—

1. That the proof shewed, there was a special contract; and
on that the plaintiff should have declared, as they are bound
to abide by its terms.  [2 Porter's Rep. 376; Chitty on Con.
19 to 21; 2 Starkie's Ev. 71, note 1.]

2. The construction of the contract is, that the Board of Di-
rectors would pay what was allowed.   The facts disclosed in
the bill of exceptions show that they had voted what was
thought to be a just allowance to the defendants in error, for
their professional services, and that the latter refused to receive
that sum.   They are not in law entitled to more.   [2 Starkie's
Ev. 72.]

3. The act of February, 1839, inhibited the Board from con-
tracting for legal services at a price beyond one thousand dol-
lars for a year, and the Circuit Judge should so have charged
the jury.

PECK and WM. COCHRAN, for the defendants.   It is need-
less to inquire whether the contract between the parties was
special or not, as a conclusion either way is wholly immaterial.
If special, the plaintiff in error, by refusing to adopt the means
it prescribes to ascertain the value of the defendants' services,
released them from all obligation so to consider it, and author-
ized them to declare on a *quantum meruit:* on their part no

further act was required, but they were entitled to be paid the value of their services.

2. The Board of Directors had no authority to determine what sum should be paid to the defendants in error for their services. This in the event of disagreement was to be ascertained by a professional gentleman; but this mode of adjustment, though proposed by the defendants, was refused by the plaintiff in error. In this proposition the defendants did more than the law required; for it is settled that a stipulation in a contract to submit matters which may arise to arbitration, will not bar an action.

3. The act of 1839, relates to the regular attorney, elected by the corporation for a year, and not to such extraordinary professional services as the interest of the Bank may require. This conclusion is apparent from an examination of the statute, and the cause of its enactment.

COLLIER, C. J.—The elementary writers upon pleading concur in laying down the law, that where the demand is merely of a pecuniary nature, and is founded upon a past or executed consideration, it is sufficient to declare upon the common *indebitatus* counts. [1 Chitty's Plead. 316.] And such will be found to be the conclusion of the adjudged cases. Here the declaration is framed upon the idea, that the services for the performance of which the plaintiff had undertaken, had been performed, and that the defendant had refused to pay an equivalent therefor. The rule we have stated applies to such a case. In another point of view, the form of declaring which was adopted was clearly permissible. The defendant refused to submit to the arbitrament of a member of the legal profession the ascertainment of the value of the plaintiffs services; as the paper relied on as a contract contemplates. This indicated an unwillingness on the part of the defendant to have the extent of the liability of the Bank admeasured, as the plaintiffs proposed; and authorized the latter to recover upon a *quantum meruit*. The case of Randolph v. Perry, [2 Porter's Rep. 376,] which was cited at the argument is entirely unlike the present. There the question was, whether a valid and intelligible contract in writing, could be set aside and sub-

stituted by a verbal agreement without consideration, which was materially different in its terms; the Court very properly determined that it could not.

The contract which is evidenced by the plaintiffs' letter does not authorize the Directors to fix the value of the plaintiffs' services. They propose, that inasmuch as it could not be known what amount of business would be required of them, that their compensation should be left for future adjustment; and that they would receive what any gentleman of the bar would consider reasonable. This, at most, is an agreement to arbitrate, and will not bar the action. In Stone v. Dennis, [3 Porter's Rep. 239,] the Court say, " it is clear, that a party, by agreeing to submit his case to arbitration, does not lose his remedy at law, unless at the time of the commencement of his suit there is an arbitration pending, or an award has actually been made ; and a contract absolutely to waive one's right to go to law, is void, as against public policy." See to the same effect Bozeman v. Gilbert, 1 Ala. Rep. N. S. 90.]

The agreement was to attend to the litigated business of the Bank, pending or· to be brought before the Courts from the time the plaintifis were retained to the end of the year. If any of the cases should not be determined during that period, the plaintiffs were under no obligation to give further attention to them. The term for which they were engaged was expressly limited, and the contract different from that under which counsel are usually retained in this State.

The section of the act of February, 1839, which it is supposed inhibited the employment of the plaintiffs by the Directors of the Bank is as follows, viz :

" That the several attorneys of the Bank of the State of Alabama and its Branches, shall hereafter receive an annual salary of one thousand dollars, payable quarterly, and no more."

Previous to this act, the attorneys for the Banks were compensated by a stipulated fee, in each case, which was uniform, without regard to the amount of professional labor, or skill, which was required for its prosecution or defence. Such was the number of suits, during some years, by some of the Banks, that at least five times the prescribed salary was occasionally paid to an attorney. To remedy what the Legislature con-

ceived to be a prodigal expenditure of money, the act in question was passed. It applies alone to the regular attorney, who is elected by the Directors, as an officer in the respective Banks; and does not, expressly or by implication, restrain them in the employment of such other professional assistance as the interest of the Bank may require. The power of the Directory of the Bank of the State would be plenary, independent of any express delegation by the Legislature; but they are expressly authorized by its charter to appoint such officers, &c. as shall be necessary for executing the business of the corporation. [Aik. Dig. 57.] It is important that they should be invested with such an authority; for it might so happen that the Bank would require the services of an attorney at law in another State, or in different counties of this State at the same time. Unless, under such circumstances, the Directors could employ and compensate as many professional gentlemen as the interest of the Bank required to be retained, the business of the corporation might very materially suffer. Whether the Directors, in entering into the contract with the plaintiffs, did that which was expedient and proper, under the circumstances, is a question not submitted to us, but the inquiry is, did they exceed their powers? On this point we have expressed our opinion.

Our conclusion upon the entire case is, that the judgment of the Circuit Court should be affirmed.